UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No: 1:22-cv-22051-KMM

HAMMOCKS COMMUNITY
ASSOCIATION, INC.

    Plaintiff,
v.

STATE OF FLORIDA, OFFICE OF THE
STATE ATTORNEY, ELEVENTH
JUDICIAL CIRCUIT

    Defendant.
_____/

## DEFENDANT'S MOTION TO DISMISS

DEFENDANT, the State of Florida, Office of the State Attorney, Eleventh Judicial Circuit ("SAO"), files this Motion to Dismiss under Rule 12(b)(1) and (6), Fed. R. Civ. P. Dismissal of this case, which is effectively an appeal of a state court discovery order, is required for five reasons: 1) Plaintiff's claims are barred by the Eleventh Amendment, 2) the Court lacks jurisdiction according to the *Rooker-Feldman* doctrine 3) Plaintiff's claims are barred by the *Younger* abstention doctrine, 4) the SAO is not a "person" subject to liability under Section 1983 and even if an individual prosecutor had been named any damages claim would be barred by prosecutorial or qualified immunity, and 5) Plaintiff fails to state a claim upon which relief can be granted. Plaintiff's attempt to shield all of its financial records from disclosure in response to statutorily authorized investigatory *subpoenas duces tecum* should be rejected.

## BACKGROUND

As part of an investigation into the alleged theft of homeowner association funds by the former president of the Plaintiff Hammocks Community Association ("Association"), the SAO

issued three investigative *subpoenas duces tecum* to the Association pursuant to Fla. Stat. § 27.04. Complaint (ECF No. 1), ¶¶ 7, 37. The mere issuance and service of those subpoenas is the basis for this Section 1983 action alleging that the Association's Fourth Amendment rights have been violated. *Id*., ¶ 114 (Count I: civil rights deprivation), ¶ 121 (Count II: declaratory relief that Fla. Stat.§ 27.04 is unconstitutional as applied), ¶ 130 (Count III: injunctive relief).

This investigation into the alleged theft by the Association's President Marglli Gallego began five years ago: subpoenas were issued to banks, mortgage companies, credit card companies, utility companies and vendors of the Association, which claims to be the largest homeowners' association in Florida. *Id*., ¶¶ 25, 37-44.[1] The Association also claims to have an operation that is "more complicated and document intense then [sic] many cities in Miami-Dade County because of the services and amenities it provides to its [20,000] residents." *Id*., ¶¶ 28, 34. The *subpoenas duces tecum* ("SDT") at issue in this case were issued to the Association in November 2018 (SDT 18-460), *id*., ¶ 52; March 2020 (SDT 20-173), *id*., ¶ 98; and June 2021 (SDT 21-487), *id*., ¶ 103.[2]

The Association failed to comply with the subpoenas.[3] The Association's motions to quash or for protective order as to the most recent subpoena, SDT 21-487, which argued that the

---

[1] For the purposes of this Motion to Dismiss, Defendant accepts the Association's allegation that it is the largest in Florida.

[2] The subpoenas are attached to the Association's pleading and are properly considered by the Court in deciding this Motion to Dismiss, according to Rule 10(c), Fed. R. Civ. P.

[3] The Complaint refers to what the Association "would need" to do or what "would be" required to do if it complied with SDT 18-460, *e.g.*, Complaint (ECF No. 1), ¶¶ 75, 90-91, 96, and as to

subpoena was "overbroad and extremely burdensome," were unsuccessful. *Id*., ¶ 106, 109. The Association appealed the denial of its motion for protective order, and the appeal was dismissed by the Third District Court of Appeals because the Association failed to show irreparable harm. *Id*., ¶ 110; *see also* Composite Exhibit 1 (Order of the Third District Court of Appeals entered March 16, 2022, in Case No. 3D21-1973, dismissing Petition because the Association failed to show irreparable harm, and underlying trial court Order entered Sept. 14, 2021, in Felony Case No. F21-13390, Eleventh Judicial Circuit[4]).

In the state court proceedings, the Association already litigated the issue of costs regarding the production of documents and lost, as the trial court found that the Association must turn over the documents "regardless of payment," Complaint, ¶¶ 107-108, although the court noted that the Association may recover costs as provided in Fla. Stat. § 92.153, *see* Composite Exh. 1 (trial court order). The Association also had sought in its appeal to "preclude production of documents due to the enormous burden and cost," which was unsuccessful, as noted above. Complaint, ¶¶ 107-110; *see also* Composite Exh. 1 (appellate order).

The Complaint before this Court was filed on July 7, 2022.

---

SDT 20-173 refers to an "estimate" of what documents it would need to produce, *id.*, ¶ 99, revealing that the Association has not yet complied with the SDTs.

[4]The Court can take judicial notice of state court documents at the Rule 12(b)(6) stage. *See, e.g., Lozman v. City of Riviera Beach, Fla.*, 713 F.3d 1066, 1075 n.9 (11th Cir. 2013) (taking notice of filings in state court eviction action when ruling on *res judicata* question in federal case). Further, the Association's Complaint before this Court refers to the motions the Association filed, the fact that the state court ruled on those motions, and that the Association's appeal to the Third District Court of Appeals was denied. Complaint (ECF No. 1), ¶¶ 106-110.

## **MEMORANDUM OF LAW**

### A. The Eleventh Amendment bars this action against the State Attorney's Office

Sovereign immunity under the Eleventh Amendment precludes suits by citizens against their own States in federal court and applies unless Congress abrogates that immunity or a state waives the immunity and consents to be sued. *Carr v. City of Florence, Ala.*, 916 F.2d 1521, 1525 (11th Cir. 1990). Neither abrogation nor waiver has happened here. *See, e.g.*, Fla. Stat. § 768.28(18); *Gamble v. Florida Dep't of Health & Rehabilitative Servs.*, 779 F.2d 1509, 1515 (11th Cir. 1986) (Florida has not waived its sovereign immunity as to damage suits brought pursuant to Section 1983).

This Section 1983 suit against the SAO is barred because the provision in the Eleventh Amendment that states are immune from suit in federal court extends to "arms of the state" such as a state attorney's office. *Manders v. Lee*, 338 F.3d 1304, 1308 (11th Cir. 2003) (Eleventh Amendment bars suits brought in federal court against an "arm of the State"); *Rosario v. American Corrective Counseling Servs., Inc.*, 506 F.3d 1039, 1043 (11th Cir. 2007) ("in this case there is no dispute that the SAO is an arm of the State"); *Cyber Zone E-Café, Inc. v. King*, 782 F. Supp. 2d 1337 (M.D. Fla. 2011) (suit against state attorney in his official capacity is no different from a suit against the state itself, state attorney is an "arm of the state").

Further, the Association's attempt to receive retrospective declaratory relief from the SAO is barred. The Eleventh Amendment "bars suits against state officials in federal court seeking retrospective or compensatory relief but does not generally prohibit suits seeking only prospective injunctive or declaratory relief." *Summit Med. Associates, P.C. v. Pryor*, 180 F.3d 1326, 1337 (11th Cir. 1999). Nor is there a basis for an action for prospective or declaratory

relief against the SAO because the *Ex Parte Young* doctrine can only be applied to "ongoing and continuous violations of federal law." *Id*. In this case, the *Ex Parte Young* doctrine does not apply because there are no "ongoing and continuous" violations of federal law alleged: the Complaint makes clear that the subpoenas already have been served. "Declaratory relief is not prospective as required by the *Ex Parte Young* doctrine when it would serve to declare only past actions in violation of federal law: retroactive declaratory relief cannot be properly characterized as prospective." *Taylor-Tillotson v. Fla. Dep't of Children & Families*, Case No. 12-81364-CIV, 2013 WL 6050968, at *4 (S.D. Fla. Nov. 14, 2013) (internal citations omitted).

Dismissal of the Association's action under Rule 12(b)(1) is appropriate here. "[W]here an arm of the state is entitled to sovereign immunity, a district court may dismiss without prejudice a § 1983 action for lack of subject matter jurisdiction." *Hatcher v. Alabama Dep't of Human Servs.*, 747 F. App'x 778, 783 (11th Cir. 2018) (citations omitted).

**B. This action is barred by the *Rooker-Feldman* doctrine**

The *Rooker-Feldman* doctrine bars the Association's challenge in this Court to the correctness of the state court's order denying the Association's Motion to Quash and for Protective Order, and the Third District Court of Appeals' dismissal of the Petition seeking review of that trial court decision. The doctrine derives from *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923), and *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983). Pursuant to that doctrine, federal district courts lack jurisdiction to review state court judgments. *Nicholson v. Shafe*, 558 F.3d 1266, 1271 (11th Cir. 2009).

This action is, in effect, an appeal of a state court discovery order. The Association filed its Motions to Quash and for Protective Order in response to the SAO *subpoenas duces tecum*

and argued that they were overly burdensome, unreasonable, and costly. The subpoenas being challenged all were issued only after subpoenas already had been served on banks, vendors, *etc*., and all were issued pursuant to Fla. Stat. § 27.04, which authorizes a state attorney to use "the process of his or her court to summon witnesses from throughout the state to appear before the state attorney …." Florida courts have "repeatedly held that the state attorney acts as a one-person grand jury in carrying out investigations into noncapital criminal conduct and the state attorney must be granted reasonable latitude in that role." *State v. Investigation*, 802 So. 2d 1141, 1143-44 (Fla. 2nd DCA 2001), citing *Doe v. State*, 634 So. 2d 613, 615 (Fla. 1994). The statute also allows the state attorney to issue *subpoenas duces tecum* for records as part of an ongoing investigation. *Id*., citing *Imparato v. Spicola*, 238 So. 3d 503, 506 (Fla. 2nd DCA 1970). Further, Rule 1.410(c), Fla. R. Civ. P., provides that a person responding to a *subpoena duces tecum* may object and file a motion to quash or modify the subpoena.

After several hearings, at which the Association had the opportunity to litigate all pertinent issues and did file motions to quash or for protective orders, the trial court determined that the Association must comply and issued an order. That order was not disturbed on appeal. The present federal suit, although reframed as a Fourth Amendment violation brought under § 1983, seeks the same relief that was sought in the state court motions and appellate petition: to avoid compliance with the subpoenas. Pursuant to the *Rooker-Feldman* doctrine, "[i]t is well-settled that a federal district court lacks jurisdiction to review, reverse, or invalidate a final state court decision." *Dale v. Moore*, 121 F.3d 624, 626 (11th Cir. 1997).

"[A] plaintiff may not seek reversal of a state court judgment simply by recasting his complaint in the form of a civil rights action." *Hagerty v. Succession of Clement*, 749 F.2d 217, 220 (5th Cir. 1984). If a plaintiff challenges a state court decision as unconstitutional, "Section

1983 is inappropriate either to compel or to appeal a particular course of action by a state court." *Howard-Bey v. Scruggs*, Case No. 2:17-CV-482-WKW, 2017 WL 4533342, at *3 (M.D. Ala. July 20, 2017), *report and recommendation adopted*, 2017 WL 4533133 (M.D. Ala. Oct. 10, 2017) (applying *Rooker-Feldman* doctrine to a bond determination). The reason for this is that federal district courts "do not have jurisdiction ... over challenges to state court decisions in particular cases arising out of judicial proceedings even if those challenges allege that the state court's action was unconstitutional." *District of Columbia Court of Appeals v. Feldman,* 460 U.S. 462, 486 (1983).

In other words, the Association's attempt to frame their objections to the subpoenas as a violation of their constitutional rights does not save this case from the *Rooker-Feldman* doctrine, because the Association ultimately seeks review (and reversal) of the state court judgment. This Court could not decide in the Association's favor without the practical effect of nullifying the state court's order, thus making this constitutional claim "inextricably intertwined" with the state court decision. "Federal district courts may not exercise jurisdiction to decide federal issues which are inextricably intertwined with a state court's judgment." *Dale v. Moore,* 121 F.3d at 626. A district court participates in improper appellate review when it "entertains a claim that the litigants did not argue in the state court, but is inextricably intertwined with the state court judgment" and it is this exercise that is barred by *Rooker-Feldman*. *Id*.

The decision to apply the doctrine should "focus on the federal claim's relationship to the issues involved in the state court proceeding." *Goodman ex rel. Goodman v. Sipos*, 259 F.3d 1327, 1333 (11th Cir. 2001). Here, the claim that the subpoenas are an unreasonable search in violation of the Fourth Amendment is clearly a claim that was central to the issue in state court. Although the Association did not explicitly argue constitutional violations in state court, it had

every opportunity to raise these federal claims in the state court proceedings and the Association did argue overbreadth and burdensomeness to the state court judges. The *Rooker-Feldman* doctrine is "broad enough to bar all federal claims which were, *or should have been*, central to the state court decision, even if those claims seek a form of relief that might not have been available from the state court." *Goodman*, 259 F.3d at 1333 (emphasis added).[5]

Moreover, a federal district court is "without subject-matter jurisdiction under the *Rooker–Feldman* doctrine to enjoin the enforcement of state court discovery orders that have become final if the federal plaintiff was legally entitled to challenge the discovery order through the state appellate channels." *Union Planters Bank National Assoc. v. Tariq Salih v. John A. Gavel, Jr.*, 369 F.3d 457, 463 (5th Cir. 2004). It is clear from the record alleged by the Association in its pleading that it was legally entitled to challenge the state court's order and did so, unsuccessfully.

For all of these reasons, the *Rooker-Feldman* requires dismissal of this action.

**C. To the extent that any challenges as to earlier subpoenas are pending, the *Younger* abstention doctrine applies**

To the extent that the Association tries to argue that it is still challenging the earlier subpoenas issued in 2018 and 2020 – even though the Association never sought appellate review of those subpoenas, this Court should decline to entertain a challenge of those subpoenas here. The *Younger* abstention doctrine, as set forth in *Younger v. Harris*, 401 U.S. 37 (1971),

---

[5]Similarly, to the extent the Complaint attempts to allege damages (without factual allegations supporting such a claim), this claim is also barred by *Rooker-Feldman* as this relief is inextricably intertwined with the state court order. *See Dale,* 121 F.3d at 626*; Scott v. Frankel*, 562 F. App'x 950, 953 (11th Cir. 2014).

recognizes the "strong federal policy against federal-court interference with pending state judicial proceedings absent extraordinary circumstances." *Middlesex County Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 431 (1982). The doctrine derives from "the vital consideration of comity between the state and national governments," *Luckey v. Miller*, 976 F.2d 673, 676 (11th Cir. 1992), and requires that the federal action be dismissed, and not merely postponed, *Thompson v. Fla. Bar*, 526 F. Supp. 2d 1264, 1273 (S.D. Fla. 2007).

Although federal courts have an obligation to exercise their jurisdiction, "there are classes of cases in which the withholding of authorized equitable relief because of undue interference with state proceedings is the 'normal thing to do.'" *New Orleans Pub. Serv., Inc. v. Council of New Orleans*, 491 U.S. 350, 359 (1989), citing *Younger*, 401 U.S. at 45. The circumstances that render abstention appropriate include those in which there is an ongoing "state civil proceeding involving an order that is 'uniquely in furtherance of the state courts' ability to perform their judicial functions.'" *Dandar v. Church of Scientology Flag Serv. Organization, Inc.*, 619 F. App'x 945, 947 (11th Cir. 2015). The subpoenas being challenged in this case were issued in the state court proceedings and have been the subject of state court orders and, thus, are in furtherance of the state court's ability to perform its judicial functions. *Younger* directs federal courts to abstain when "[p]roceedings necessary for … the functioning of the state judicial system … evidence the state's substantial interest in the litigation [and] a federal court should abstain unless state law clearly bars the interposition of the constitutional claims." *Middlesex*, 457 U.S. at 432 (citation and internal marks omitted). The test for the application of *Younger* as articulated by *Middlesex* is set out in three parts: "first, do [the proceedings] constitute an ongoing state judicial proceeding; second, do the proceedings implicate important state interests; and third, is there an adequate opportunity in the state

proceedings to raise constitutional challenges." *31 Foster Children v. Bush,* 329 F.3d. 1255, 1279 (internal quotations omitted).

It is a plaintiff's burden to establish that the ongoing state court proceedings do not provide an adequate opportunity to raise and vindicate the plaintiff's claims, *31 Foster Children,* 329 F.3d. at 1279 (citations and internal quotations omitted). Here the Association has failed to carry that burden. The question is not whether the state court "can do all that [a plaintiff wishes the court] could, but whether the available remedies are sufficient to meet [t]he requirement that the remedy be adequate." *Id.* When a defendant has the "opportunity to raise and have timely decided by a competent state tribunal the federal issues involved…federal courts should abstain from interfering with the ongoing proceedings." *Middlesex*, 457 U.S. at 437 (internal quotations omitted). The Association has failed to demonstrate that it lacks access to the state courts – indeed, the facts alleged in the Complaint demonstrate that the Association actively litigated in state court the efforts to obtain its records. "[F]ederal court oversight of state court operations, even if not framed as direct review of state court judgments" is problematic and calls for *Younger* abstention. *31 Foster Children*, 329 F.3d at 1279. "So long as the constitutional claims [of the claimant] can be determined in the state proceedings and so long as there is no showing of bad faith, harassment, or some other extraordinary circumstance that would make abstention inappropriate, the federal courts should abstain." *Middlesex*, 457 U.S. at 435. It is the litigant's burden to make a substantial allegation that shows actual bad faith, *Dandar*, 619 F. App'x at 948, citing *Younger*, which the Association has failed to do.

Here, even if the Association's Complaint is read as a challenge to the 2018 and 2020 subpoenas and even if the allegations are construed to imply that the state court has not conclusively ruled that those two subpoenas must be complied with, this Court should decline to

consider this challenge because the Association can raise any further concerns regarding those subpoenas in the state court. As argued above, the subpoenas were issued pursuant to the SAO's authority under Fla. Stat. § 27.04, and the subpoenas could be challenged pursuant to the provisions of Rule 1.410(c), Fla. R. Civ. P.

**D. The Association cannot proceed against the SAO under Section 1983**

This action alleges that the SAO violated the Association's civil rights by issuing investigative subpoenas in violation of the Fourth amendment of the constitution. Section 1983 provides:

> "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress…."

42 U.S.C. § 1983. The Supreme Court has held that a state is not a person within the meaning of § 1983, *Will v. Michigan Dep't of State Police,* 491 U.S. 58, 65-66 (1989), and this holding also applies to governmental bodies that are "arms of the state," *id*., at 70. Therefore, dismissal of this action is required.

Even if the Association's Complaint had named an individual prosecutor, the Complaint would still need to be dismissed because of prosecutorial immunity or qualified immunity. A determination of whether a defendant prosecutor is entitled to immunity turns on the function being performed, *i.e*., whether the activities at issue are "prosecutorial functions." *Long v. Satz*, 181 F.3d 1275, 1278-79 (11th Cir. 1999). Prosecutors are entitled to absolute immunity from damages under § 1983 for acts taken in initiating a prosecution. *Imbler v. Pachtman*, 424 U.S. 409, 431 n.33 (1976); *Bolin v. Story*, 225 F.3d 1234, 1242 (11th Cir. 2000). The issuance of the subpoenas here was done in the context of the prosecution of the former President, Ms. Gallego,

and thus the activities here are prosecutorial functions for which immunity is appropriate.[6] Even as to the actions taken before the prosecution of Ms. Gallego was formally filed, an individual prosecutor would be entitled to qualified immunity. *Buckley v. Fitzsimmons*, 509 U.S. 259, 273 (1993); *Fullman v. Graddick*, 739 F.2d 553, 558 (11th Cir. 1984).

The doctrine of qualified immunity shields public officials from damages claims when their conduct was objectively reasonable and they did not violate clearly established law. *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011); *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). An official acting within the scope of his employment has qualified immunity "provided that the conduct was not 'so obviously illegal in the light of then-existing law that only an official who was incompetent or who knowingly was violating the law would have committed' the acts." *Crosby v. Paulk*, 187 F.3d 1339, 1344 (11th Cir. 1999). Qualified immunity is determined by an objective standard, and the official's intent and motivation are insignificant. *Id.,* at 1344. A right is considered clearly established "if, in light of preexisting law, the unlawfulness of the official's conduct is 'apparent.'" *Cooper v. Dillon*, 403 F.3d 1208, 1220 (11th Cir. 2005). Precedent must place the question "beyond debate." *al-Kidd*, 563 U.S. at 741. As discussed below, the precedent surrounding the Fourth Amendment as applied to the issuance of *subpoenas duces tecum* does not support the Association's claims in this lawsuit and, thus, even if the Association had named a specific individual state attorney, that individual would be entitled to qualified immunity.

---

[6]The felony case against Ms. Gallego was filed March 31, 2021. *See* Exhibit 2 (docket in Felony Case No. F21-5594, *State v. Gallego*).

**E. The Association fails to state a claim for relief**

Even if none of the immunity and abstention doctrines cited above applied to this case, and even if the Association had named a defendant who could be sued under Section 1983, the Complaint is still subject to dismissal under Rule 12(b)(6) because it fails to state a claim under the Fourth Amendment. The Plaintiff in this case does not seek to prevent an unlawful search and seizure, instead it seeks complete protection from disclosure because in Plaintiff's view, the subpoenas' scope is unreasonable under the Fourth Amendment. This argument is not supported by the Association's factual allegations, which are accepted at this stage for the purposes of this Motion to Dismiss, nor does it accurately apply the controlling caselaw.

> 1. **The subpoenas challenged here are not comparable to the subpoenas found to be unreasonable in the cases cited by Plaintiff**

The Association attempts to support its claim that the subpoenas violate their Fourth Amendment rights by citing *Hale v. Henkel*, 201 U.S. 43 (1906), and its progeny. But the Association overlooks that the underlying principle in *Hale* is that an investigative subpoena must be "duly authorized," *Hale*, 201 U.S. at 77, which the subpoenas challenged here were. It is the duty of every State Attorney to investigate matters to determine whether a person or persons have violated laws of the State of Florida. The Florida Legislature has authorized prosecutors, under Fla. Stat. § 27.04, to issue subpoenas requiring persons to appear before them to testify as to violations of the law.

"We think it quite clear that the search and seizure clause of the 4th Amendment was not to interfere with the power of courts to compel, through a *subpoena duces tecum*, the production, upon a trial in court, of documentary evidence." *Hale*, 201 U.S. at 73. In *Hale* the issue was an appeal by an individual, the Secretary and Treasurer of a company being investigated by a federal grand jury, of his custodial confinement because of his refusal to comply with the grand

jury's *subpoena duces tecum*. The court in *Hale* did not treat the subpoena as equivalent to an actual search, only that it must not be unreasonable. *Id.*, at 76.[7]

> The subpoena for documents issued by the federal Grand Jury in *Hale* included:
>
> all understandings, contracts, or correspondence between the MacAndrews & Forbes Company, and…six different companies, as well as all reports made and accounts rendered by such companies from the date of the organization of the MacAndrews & Forbes Company, as well as all letters received by that company since its organization from more than a dozen different companies, situated in seven different states in the Union.

*Hale*, 201 U.S. at 76-77. Here, the Association cannot make a similar claim of unreasonableness when compared to the subpoena reviewed in *Hale*. The Association here has alleged that it is the largest in Florida, with thousands of residents, and extensive business dealings with vendors and banks, *etc*. Not surprisingly, a subpoena related to the investigation into criminal activity by the Association's former president could seek a broad range of documents. In addition, as is evident from the face of SDT 21-487, which is attached as Exhibit C to the Complaint (ECF No. 1-3), the investigation includes the Association's activities with multiple entities and two other named individuals in addition to the former president.

---

[7]The Supreme Court's observation in *Hale* that a corporation has some protection against an "unreasonable search," 201 U.S. at 76, arguably was *dicta*, as the court noted that its objection to the subpoena at issue in that case did not go to the validity of the order being reviewed. *Id.*, at 78. Justice Harlan, concurring in the court's overall decision in *Hale*, specifically wrote that he did not agree that a corporation can claim the immunity given by the Fourth Amendment. *Id.*, at 78-79. Justice McKenna similarly concurred in the court's overall decision but did not agree with the observation of the majority about the Fourth Amendment. *Id.*, at 82-83.

The Association provides the example that it does not just maintain contracts, billing statements, and invoices, it also maintains photographs, emails, request forms for tree removals, verification steps, printed out property appraiser forms, and maps of the neighborhood, and it claims that "all of this falls within the request for contracts, invoices and billing statements." Complaint (ECF No. 1), ¶ 67. The SAO did not request these additional items. Just because the Plaintiff chooses to maintain records in this manner or operates a large enterprise affecting the financial interests of thousands of homeowners, doesn't mean that it is shielded from complying with a subpoena for relevant records of that enterprise.[8]

The Supreme Court again addressed the issuance of investigatory subpoenas by federal agencies in *Oklahoma Press Pub. Co. v Walling*, 327 U.S. 186 (1946). The subpoenaed parties in *Oklahoma Press* refused to comply, on First and Fourth Amendment grounds, with subpoenas issued by the U.S. Department of Labor, pursuant to its statutory authority. The *Oklahoma Press* court stated that "[t]he short answer to the Fourth Amendment objections is that the records in these cases present no question of actual search and seizure, but raise only the question whether orders of court for the production of specified records have been *validly made*….[n]o officer or other person has sought to enter petitioners' premises against their will, to search them or to seize or examine their books, records or papers without their assent…." *Oklahoma*, 327 U.S. at 195 (emphasis added). The court noted that a subpoena provides "adequate opportunity to present objections." *Id*.

---

[8] In addition, the records at issue in these subpoenas arguably are not private where they are the type of records that the Association, according to Florida law, must maintain and disclose to others (*e.g.,* homeowners and their authorized representatives) upon demand. Fla. Stat. § 72.303(4), (5).

In *Oklahoma Press* the court noted that the "gist" of the protection of the Fourth Amendment as applied to *subpoenas duces tecum* is that the "disclosure sought shall not be unreasonable." *Oklahoma*, 327 U.S. at 208. The parameters of that inquiry "cannot be reduced to formula" because, for example, "relevancy and adequacy or excess in the breadth of the subpoena are matters variable in relation to the nature, purposes and scope of the inquiry." *Id.*, at 209. The court found that the subpoenas at issue in that case, which sought as to a specific time period all "books, papers and documents showing the hours worked by and wages paid to each of your employees," all "books, papers and documents showing the distribution of [news]papers outside the State of Oklahoma, the dissemination of news outside the State of Oklahoma, the source and receipt of news from outside the State of Oklahoma, and the source and receipt of advertisements of nationally advertised goods," sought only records that were relevant to the authorized inquiry by the U.S. Department of Labor into whether the newspaper publishers were violating the Fair Labor Standards Act. Accordingly, it was "impossible to conceive how a violation of petitioners' rights could have been involved." *Id.*, at 209-10.[9] Similarly, here it is impossible to conceive how the Association's rights have been violated where the subpoenas were limited in time and sufficiently specific as to the documents sought, all of which related to the investigation of alleged criminal activity by the Association's former president involving the Association's funds. Each of the SAO-issued subpoenas provided a specific directive that made the search as narrow as possible without hindering the SAO's investigation.

**2. The Association had the opportunity to challenge the subpoenas in state court**

---

[9] Although the petitioners had not challenged the breadth of the subpoenas, the court addressed the issue "to remove any possible basis for … misunderstanding in the future." *Oklahoma Press*, 327 U.S. at 197.

As stated in their Complaint, the Association had the opportunity to present its objections and did so as to at least one of the subpoenas, SDT 21-487. The Association was served with three subpoenas, each requesting specific documents within a specific timeframe, all related to the investigation of the former board president who is alleged to have stolen the homeowner association's funds. These subpoenas did not result in an actual search and seizure, but rather a request for production that provided ample opportunity for the Association to lodge its objections, and it did lodge its objections in state court. Even if the Complaint is read to state that the earlier two subpoenas (SDT 18-460 and SDT 20-173) were not subjected to appellate court review, it is indisputable that there were several hearings on these matters and that the Association *could* have sought state court appellate review pursuant to Florida's procedural rules and failed to do so.

As similarly provided in the federal procedure for challenging subpoenas, *see* Rule 45(d)(2)(B), Fed. R. Civ. P., recipients of a subpoena issued in Florida courts have the opportunity to seek judicial protection by filing motions to quash or by seeking protective orders, *see* Fla. R. Civ. P. 1.410(c) – precisely what the Association here did. This system provides the opportunity for objections to be heard and for the court to balance the needs of the State with the rights of the person or persons subpoenaed. Any other system, such as one requiring judicial approval prior to issuance of the subpoena, or one permitting federal courts to step in and review a state-issued subpoena, would be impracticable. The legislature has entrusted the SAO to issue subpoenas as part of its investigatory powers, and nothing in the statute requires judicial oversight.

The state court reviewed the most recent subpoena, SDT 21-487, at the Association's request, and denied the Association's motion to quash or for protective order. *See* Composite

Exh. 1 (trial court order). The Association will never be able to plausibly state that it lacks an adequate remedy in state court for the alleged violation of its civil rights. Florida state courts are competent to address investigatory subpoenas in relation to the Fourth Amendment and, indeed, have applied *Hale* and *Oklahoma Press* to their analyses, as seen in *Dean v. State*, 478 So. 2d 38 (1985) (remanding a case where evidence was seized during a search after a *subpoena duces tecum* was served and where there was no opportunity to oppose the subpoena, noting that a key feature of subpoenas that keep them from being equivalent to warrantless searches is the ability to challenge the *subpoena* prior to production of documents); *Imparato v. Spicola*, 238 So. 2d 503 (2nd DCA 1970) (directing that an omnibus subpoena that lacked specificity and sought all records from the target corporation's date of inception was overbroad); and *Check'n Go of Florida, Inc. v. State*, 790 So. 2d 454, 459 (5th DCA 2001) (limiting enforcement of *subpoena duces tecum* that sought documents created prior to incorporation of entity and documents as to transactions outside of Florida and other irrelevant transactions).

### 3. There is no basis for injunctive relief nor damages

The Association in this case seeks injunctive relief, which courts have held should be used sparingly and only in clear and plain cases. *See, e.g., Rizzo v. Goode*, 423 U.S. 362, 378 (1976). Plaintiffs "must contend with the 'well-established rule that Government has traditionally been granted the widest latitude in the dispatch of its own internal affairs.'" *Id.* (citation omitted). As argued above, the Association will never be able to plausibly state that it lacks an adequate remedy at law in state court for the alleged violation of its civil rights by the issuance of these subpoenas, and that alone counsels against the need for injunctive relief from this Court.

Finally, although the Association claims, in its Wherefore clause, on page 25 of the Complaint, that it seeks "economic damages" the pleading is silent as to what damages have

been incurred. As noted above, the state court already stated that the Association may recover costs as provided in Fla. Stat. § 92.153. *See* Composite Exh. 1 (trial court order).

For all these reasons, even if the Association had named a proper defendant, or could avoid all of the immunity and abstention doctrines, the Complaint still fails to state a claim for relief under the Fourth Amendment.

## CONCLUSION

For the reasons stated above, the SAO is entitled to dismissal of this Section 1983 action. Although dismissal without prejudice is appropriate based on the Association's failure to demonstrate subject matter jurisdiction exists and its failure to state a plausible claim for relief, dismissal with prejudice is proper based on the application of the immunity doctrines, because even if given an opportunity to amend its pleading, the Association could not avoid those doctrines. The Association also will never be able to plausibly allege that it lacks an adequate remedy in state court for the alleged violation of its civil rights.

ASHLEY BROOKE MOODY
ATTORNEY GENERAL

MARTHA HURTADO
Martha Hurtado
Assistant Attorney General
Fla. Bar No: 103705
Martha.Hurtado@myfloridalegal.com

BARBARA JUNGE
Chief Assistant Attorney General
Fla. Bar. No. 993270
Barbara.Junge@myfloridalegal.com

OFFICE OF THE ATTORNEY GENERAL
110 S.E. 6th Street, 10th Floor
Ft. Lauderdale, Florida 33301
Telephone:    954-712-4600

        Facsimile: 954-527-3702

        Attorneys for Defendant, State of Florida,
        Office of the State Attorney, Eleventh
        Judicial Circuit

## **CERTIFICATE OF FILING**

PURSUANT TO Rule 5(d)(1)(B) of the Federal Rules of Civil Procedure, Local Rule 5.1(b), S.D. Fla. L.R., and Section 3.K.(4) of the CM/ECF Administrative Procedures of the Southern District of Florida, I hereby certify that on August 3, 2022, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF, which will generate a Notice of Electronic Filing to all counsel of record.

        <u>Martha Hurtado</u>
        MARTHA HURTADO
        Assistant Attorney General