## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 22-cv-22051-KMM

HAMMOCKS COMMUNITY
ASSOCIATION, INC.,

       Plaintiff,

v.

STATE OF FLORIDA, OFFICE OF
THE STATE ATTORNEY, ELEVENTH
JUDICIAL CIRCUIT,

       Defendant.

_____/

### RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION
### TO DISMISS AND SUPPORTING MEMORANDUM OF LAW

      Plaintiff, Hammocks Community Association, Incorporated (the "Hammocks"),

respectfully files this response in opposition to the State of Florida, Office of The State Attorney,

Eleventh Judicial Circuit's (the "State Attorney's Office" or "SAO") motion to dismiss the

Complaint, which was filed on August 3, 2022.  See [D.E. 6].  In support thereof, the Hammocks

states the following:

### INTRODUCTION

      The State Attorney's Office argues that the Hammocks' lawsuit must be dismissed

because it is seeking to re-litigate an issue that had already been determined in state court.  In

other words, the State Attorney's Office claims that the Court should overlook a potential

constitutional violation in deference to a state court ruling – one which was not even decided on

constitutional grounds.  As explained in detail below, the State Attorney's Office's argument is

without merit.

The Supreme Court held early this year that "[s]ection 1983 broadly authorizes suits against state officials for the 'deprivation of any rights' secured by the Constitution." *Nance v. Ward*, No. 21-439, 2022 WL 2251307, at *5 (U.S. June 23, 2022). In Nance, the state official made similar arguments, *i.e.* that federal courts must defer to a state's interest that have survived direct review within the state court system, but the Supreme Court rejected said arguments.

The Supreme Court has been increasingly clear that state law should not have a preclusive effect in barring federal lawsuits that are based on constitutional claims. See *e.g. Knick v. Twp. of Scott, Pennsylvania*, 139 S. Ct. 2162, 2167 (2019)("The Civil Rights Act of 1871, after all, guarantees 'a federal forum for claims of unconstitutional treatment at the hands of state officials,' and the settled rule is that 'exhaustion of state remedies 'is *not* a prerequisite to an action under [42 U.S.C.] § 1983.'"). Moreover, the preclusion doctrines relied upon by the State Attorney's Office are equally inapplicable. Accordingly, the Court must deny the SAO's motion to dismiss.

## FACTS

In 2017 and 2018, the State Attorney's Office began investigating the Hammocks' former president for the alleged theft of association funds. The underlying basis for the SAO's investigation was predicated upon "witnesses" who were knowingly biased and unreliable, and who knowingly misrepresented facts to the police.[1]

---

[1] This case is much more complexed than what is stated in the Complaint. The Hammocks attempted to be as concise as possible. However, should the Court find that the facts are legally insufficient to state a cause of action, then the Hammocks requests an opportunity to amend the Complaint.

To date, the SAO has probably sent over 100 subpoenas to banks, credit card companies, mortgage companies, and other individuals and entities that do business with the Hammocks. Important here, the State has *already* received thousands of documents from individuals and corporations that are associated with the Hammocks.

After issuing 100 or so subpoenas, the State could only charge the former president with "stealing" food and using a private investigator to do surveillance on her home.[2]  The frivolity of the SAO's criminal charges is explained in detail in *Gallego v. Perez*, SD FL Case No. 20-cv-24374-BB, [D.E. 46, ¶¶ 118-181].  Long story short, the SAO did not believe that small food items could be an association expense.  However, the SAO made absolutely no effort to seek the truth about the "stolen food items."  The lead detective, Ivette Perez, best described the SAO's investigation during her recent deposition in the criminal case:

Def. Counsel:  I'm just saying, how can you prove that she stole Little Caesar's pizza?

Perez:  I'm just saying she used a credit card assigned to herself and the Hammocks Community Association to purchase pizza, whether it was from Little Caeser's, or the Don Pan, or whoever it was, and then she used money from the association to pay for that.  All these little charges are consistent with personal use, not with the function of an association.

Def. Counsel:  Do you have any evidence or information that Marglli Gallego actually made these purchases totaling $956.58 at Domino's Pizza?

Perez:  I don't have personal knowledge.  What I have is that those charges were made by Marglli Gallego's credit card.

Def. Counsel:  Do you know if these pizzas were carried out or delivered?

---

[2] The State Attorney's Office knew that the former president received numerous death threats during the time in which ***the Board*** approved the use of a private investigator.  The State also knew (or should have known) that the former president's home had been the target of vandalism and eggings.

Perez:           I don't.

Def. Counsel:  Do you know if Marglli Gallego ever signed for these pizzas?

Perez:           I don't.

Def. Counsel:  Do you know if Marglli Gallego ever consumed these pizzas?  Gave them to her family or friends?

Perez:           I don't.

Def. Counsel:  Do you know if Marglli Gallego were ever consumed for her personal use?

Perez:           I don't.

Def. Counsel:  To save time for the rest of the charges, is it safe to assume that you have no information as to whether or not Marglli Gallego ordered any of this food?

Perez:           Yes.  It's safe to assume that.  However, the only evidence I have is that her credit card was used to pay for those.

According to the SAO, "since Ms. Gallego was the treasurer in control of the accounts," then she was responsible.  More shocking, when asked "could it have been legitimate items for the association?" Perez answered, "I have no idea."

Getting back to the scope of the subpoenas, the Complaint alleges that the SAO issued three burdensome subpoenas in November of 2018 (Subpoena # 18-460), March 2020 (Subpoena # 20-173) and June 2021 (Subpoena # 21-487).  As the lead detective confirmed, she requested a subpoena for "all documents from the Hammocks, all  minutes, all vendors, all contracts, etc."  The vast majority of the documents subpoenaed by the SAO were requested in Subpoena Nos. 18-460 and 20-173.  During a state court hearing, the State Attorney's Office even recognized the sweeping aspect and difficulty of Subpoena 18-460 and stated:

"We apologize, and it's very unfortunate that the scope of this investigation is very broad…  I'm not saying it's not difficult to go through these records.  … I mean, we make no bones about that…

4

Overall, the State requested documents over a seven-year span that relate to a virtually all of the Hammocks vendors,[3] employees, contracts, payment arrangement, etc.  The State's requests were so broad that the Hammocks would be required to produce millions of documents.

After receiving Subpoena # 21-487, the Hammocks filed a motion to quash *that* subpoena and a motion for protective order in state court.  The Hammocks argued that the SAO could not just continue to issues new subpoenas to the Hammocks, which requested the exact same documents as that a judge previously ordered them to pay for.  The Hammocks believed was an effort by the SAO to negate its statutory financial obligation.

The state court judge ordered the Hammocks to provide the State with all responsive documents in State Subpoena # 21-487.  The Hammocks sought injunctive relief from the appeals court regarding Subpoena # 21-487.  The appeals court ruled that the cost of producing documents does not equate to irreparable harm, which is a condition of injunctive relief under state law.[4]  The appeals court did not even address the constitutional issues raised in the current Complaint.

It is important to point out that the state court judge specifically ruled that her decision had no bearing on Subpoena # 18-460 and 20-173 – which are by far the two most burdensome subpoenas.  The SAO is still seeking the document in Subpoena # 18-460 and 20-173. Accordingly, the SAO claims to preclusion on those two subpoenas is completely erroneous.

## STANDARD OF REVIEW

As a preliminary matter, Federal Rule of Civil Procedure 8(a)(2) only calls for a "short plain statement of the claims showing that the pleader is entitled to relief."  *See Johnson v. City*

---

[3] The documents from the tree vendor alone are hundreds of thousands of documents.

[4] Under federal law, irreparable harm is presumed in lawsuits involving constitutional violations.

*of Shelby, Miss.,* 135 S. Ct. 346 (2014).  A motion to dismiss is inappropriate unless the defendant can demonstrate "beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."  *Wright v. Newsome,* 795 F.2d 964, 967 (11th Cir. 1986) (citing *Conley v. Gibson,* 355 U.S. 41, 45–46 (1957)).  Overall, the threshold is "exceedingly low" for a complaint to survive a motion to dismiss for failure to state a claim.  *Ancata v. Prison Health Servs., Inc.,* 769 F.2d 700, 703 (11th Cir. 1985).

For the purposes of a motion to dismiss, the complaint is construed in the light most favorable to the plaintiff and all facts alleged by the plaintiff are accepted as true.  *See Hishon v. King & Spalding,* 467 U.S. 69, 73 (1984).  Furthermore, ***all inferences*** must be viewed in the light most favorable to the plaintiff.  *See FindWhat Inv'r Grp. v. FindWhat.com*, 658 F.3d 1282, 1296 (11th Cir. 2011) (emphasis added) ("all well-pleaded facts are accepted as true, and the reasonable inferences therefrom are construed in the light most favorable to the plaintiff."); *Valdes v. Miami-Dade Cty*., No. 12-22426-CIV, 2013 WL 5429938 *19 (S.D. Fla. Sept. 27, 2013) (Moreno, C.J. / Otazo-Reyes, M.J.), *aff'd*, 584 F. App'x 927 (11th Cir. 2014) ("[I]n order to make the determination that Miami–Dade County is asking for, the undersigned would have to make inferences in its favor, rather than construing [the allegations] in the light most favorable to the plaintiff," which is improper.).

## MEMORANDUM OF LAW

**A.**  **The Eleventh Amendment does not protect the SAO against ongoing and continuous violations of federal law under the *Ex Parte Young* doctrine.**

The SAO argues that the Hammocks' lawsuit is barred because the Eleventh Amendment precludes suits by citizens against their States in federal court.  However, although the Eleventh Amendment bars suits against state officials in federal court seeking retrospective or compensatory relief, it does not generally prohibit suits seeking only prospective injunctive or

declaratory relief.  *Summit Med. Assocs., P.C. v. Pryor*, 180 F.3d 1326, 1337 (11th Cir. 1999).

Under the doctrine of *Ex Parte Young,* there is a long and well-recognized exception to this rule

for suits against state officers seeking *prospective* equitable relief to end *continuing* violations of

federal law.  *Summit Med. Assocs., P.C. v. Pryor,* 180 F.3d 1326, 1336 (11th Cir. 1999).

*See also Idaho v. Coeur d'Alene Tribe,* 521 U.S. 261, 269 (1997).

 *Ex parte Young* requires the allegation of an ongoing and continuous violation of federal

law.  *See Coeur d'Alene,* 521 U.S. at 281, 117 S.Ct. 2028 ("An allegation of an on-going

violation of federal law where the requested relief is prospective is ordinarily sufficient to invoke

the *Young* fiction.")  *Id.*  This ongoing and continuous requirement merely distinguishes

between cases where the relief sought is prospective in nature, *i.e.,* designed to prevent injury

that will occur in the future, and cases where relief is retrospective.  *Id.* Thus, where there is a

threat of future enforcement that may be remedied by prospective relief, the ongoing and

continuous requirement has been satisfied. *Id.*

 Here, the declaratory and injunctive relief requested by the Hammocks is clearly

prospective in nature.  The unreasonable breadth of the subpoena duces tecum requires

Hammocks to participate in ongoing and continuous production of thousands documents with no

specificity in violation of the Fourth Amendment.   The ongoing and continuous requirement is

satisfied because there is a threat of future enforcement of the subpoenas which may be remedied

by the prospective relief requested in this suit.  Although the SAO claims that relief from the

subpoenas is retrospective because they have already been served, the fact that Hammocks now

seeks injunctive relief through this action undoubtedly illustrates that the constitutional violation

is "ongoing and continuous."  The scope is never-ending.   For example, for the Hammocks to

comply with the State's request for all documents related to Normilli Landscaping from 2015 to

the end of 2018 alone, the Hammocks would need to produce over 100,000 documents. However, the SAO requests all landscaping records from 2018 to 2022, which is alone estimated to be over 200,000 documents.

Furthermore, the State is seeking contempt proceeding against the Hammocks for failing to provide the documents requested. The relief requested by the Hammocks is clearly prospective. Dismissal of the Hammocks action under Rule 12(b)(1) is inappropriate here under *Ex Parte Young* and the Motion to Dismiss should be denied.

**B.    The *Rooker-Feldman* is inapplicable here.**

The SAO argues that the *Rooker-Feldman* doctrine requires the Court to dismiss this action for lack of subject-matter jurisdiction.   Under the *Rooker-Feldman* doctrine, federal district courts may not exercise appellate jurisdiction over state-court judgments. *Lance v. Dennis*, 546 U.S. 459, 463 (2006) (per curiam).  The Supreme Court clarified this doctrine in *Exxon*.  *Klayman v. Deluca*, No. 15-CV-80310-KAM, 2016 WL 1045851, at *3 (S.D. Fla. Mar. 16, 2016), <u>aff'd,</u> 712 F. App'x 930 (11th Cir. 2017).  *See also Exxon Mobil Corp. v. Saudi Basic Indus. Corp.,* 544 U.S. 280, 289, 125 S. Ct. 1517, 1525, 161 L. Ed. 2d 454 (2005).  More specifically, "it is well- settled that a federal district court lacks jurisdiction to review, reverse, or invalidate a final state court decision." *Dale v. Moore*, 121 F.3d 624, 626 (11th Cir. 1997).

The *Exxon* Court observed that lower courts had construed the doctrine "far beyond the contours of the *Rooker* and *Feldman* cases, overriding Congress' conferral of federal-court jurisdiction concurrent with jurisdiction exercised by state courts, and superseding the ordinary application of preclusion law." *Exxon*, 544 U.S. at 283. That Court held that *Rooker-Feldman* is confined to cases of the kind from which the doctrine acquired its name: cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district

court proceedings commenced and inviting district court review and rejection of those judgments." *Id.* at 284.

The *Exxon* Court stressed the narrowness of the doctrine and that "*Rooker-Feldman* does not otherwise override or supplant preclusion doctrine." *Id.* It explained that *Rooker-Feldman* does not "stop a district court from exercising subject-matter jurisdiction simply because a party attempts to litigate in federal court a matter previously litigated in state court. If a federal plaintiff 'present[s] some independent claim, albeit one that denies a legal conclusion that a state court has reached in a case to which he was a party. . .then there is jurisdiction and state law determines whether the defendant prevails under principles of preclusion.'" *Id.* at 293 (quoting *GASH Assocs. v. Vill. of Rosemont, Ill.*, 995 F.2d 726, 728 (7th Cir. 1993) and also citing with approval *Noel v. Hall*, 341 F.3d 1148, 1163–64 (9th Cir. 2003)). *Klayman v. Deluca*, No. 15-CV-80310-KAM, 2016 WL 1045851, at *3 (S.D. Fla. Mar. 16, 2016), aff'd, 712 F. App'x 930 (11th Cir. 2017).

As explained in *Exxon*, *Rooker-Feldman* applies only when the plaintiff complains of injuries caused by final state-court judgments. 544 U.S. at 284. The alleged injuries in this case were caused by the issuance of subpoenas and the accompanying burden of meeting their widespread and unreasonable requirements.  Contrarily, the state-court appellate decision only held that monetary cost do not amount to irreparable harm, which is necessary to secure the injunctive relief that the Hammocks requested in state court.  The Hammocks is not asking the Court to determine whether the state court's decision on irreparable harm in state injunction cases was proper.  Frankly, the state court's ruling is irrelevant.  Instead, the Hammocks is asking this Court to decide whether the number of documents requested by the SAO violates the Constitution.  Accordingly, the injuries complained about here are not caused by the state-court

judgment, and *Rooker-Feldman* does not bar subject-matter jurisdiction here.  *Klayman v. Deluca,* No. 15-CV-80310-KAM, 2016 WL 1045851, at *4 (S.D. Fla. Mar. 16, 2016), aff'd, 712 F. App'x 930 (11th Cir. 2017).

Furthermore, assuming *arguendo* that *Rooker-Feldman* does apply, it would only apply to the state court's decision as it relates to Subpoena #21-487.  The state court judge specifically noted that her decision did not affect Subpoena # 18-460 and 20-173 – which are the two most onerous subpoenas.  At a minimum, *Rooker-Feldman* and the state court decision has absolutely no bearing on the relief requested as it relates to Subpoena # 18-460 and 20-173.

**C.**   **The *Younger* abstention doctrine does not apply.**

The SAO argues that this Court should dismiss the Hammocks' challenge to Subpoena # 18-460 and 20-173 based on the *Younger* abstention doctrine, which recognizes the "strong federal policy against federal-court interference with pending state judicial proceedings absent extraordinary circumstances." *Middlesex County Ethics Comm. v. Garden State Bar Ass'n,* 457 U.S. 423, 431 (1982).  The SAO argues that the Hammocks had an opportunity to litigate its federal claims in state court, and that this Court should abstain because the subpoenas are in furtherance of the state court's ability to perform its judicial functions. However, "without showing an *undue* interference on state proceedings, abstention is not permitted." *NOPSI,* 109 S.Ct. at 2513 (citing *Younger,* 91 S.Ct. at 751); *31 Foster Children,* 329 F.3d at 1276. *Wexler v. Lepore*, 385 F.3d 1336, 1341 (11th Cir. 2004)

Despite the arguments of the SAO, the Eleventh Circuit finds "no federal authority supporting the proposition that federal claims that might be supported by the same alleged facts must be raised by state plaintiffs in cases arising under state law in state courts. *Wexler v. Lepore*, 385 F.3d 1336, 1339–40 (11th Cir. 2004). Instead, the Eleventh Circuit recognizes that

"[t]here are fundamental objections to any conclusion that a litigant who has properly invoked the jurisdiction of a Federal District Court to consider federal constitutional claims can be compelled. . .to accept instead a state court's determination of those claims." *England v. La. State Bd. of Med. Examiners,* 375 U.S. 411, 84 S.Ct. 461, 464, 11 L.Ed.2d 440 (1964).  Generally, as between state and federal courts, the rule is that the pendency of an action in the state court is no bar to proceedings concerning the same matter in the Federal court having jurisdiction." *Ambrosia Coal & Constr. Co. v. Morales,* 368 F.3d 1320, 1328 (11th Cir.2004) (quoting *Colorado River*).

Indeed, the Eleventh Circuit is clear that "the existence of a parallel state court action does not warrant abstention in federal court, unless the requested federal relief would result in meticulous and burdensome federal oversight of state court or court-like functions." *Wexler v. Lepore*, 385 F.3d 1336, 1339–40 (11th Cir. 2004). *See, e.g., Rizzo,* 96 S.Ct. at 608–9 (refusing to grant injunctive relief regarding "the internal disciplinary affairs" of municipal and state agencies); *O'Shea,* 94 S.Ct. at 679 (rejecting "continuous supervision" of future criminal trial proceedings). In those situations, abstention was required because a ruling otherwise would necessitate a high level of oversight.  *See, e.g., 31 Foster Children,* 329 F.3d at 1278–79 (addressing relief that would take "responsibility for a state's child dependency proceedings away from state courts and [put] it under federal court control"); *Miller,* 976 F.2d at 677–79 (abstaining when requested relief would, "inevitably, interfere with every state criminal proceeding").

Other circuits have reached the same conclusion on this issue. The *Younger* doctrine does not require abstention merely because a federal plaintiff, alleging a constitutional violation in federal court, filed a claim under state law, in state court, on the same underlying

facts. *See Rogers v. Desiderio,* 58 F.3d 299, 301 (7th Cir. 1995); *Marks v. Stinson,* 19 F.3d 873, 882 (3rd Cir. 1994); *Crawley v. Hamilton County Comm'rs,* 744 F.2d 28, 30 (6th Cir. 1984). As recognized, the exercise of federal jurisdiction in such a circumstance would not prevent the state court from exercising its jurisdiction just as a state court's ruling against the parties who are federal plaintiffs would not offend the federal courts. *Wexler v. Lepore,* 385 F.3d 1336, 1340–41 (11th Cir. 2004).

The *Younger* doctrine, as interpreted in the Eleventh Circuit, prevents federal courts from being "the grand overseers of state courts and court-like administration." *Wexler v. Lepore,* 385 F.3d 1336, 1341 (11th Cir. 2004). "A dispositive decision by either court does not offend the respectful relationship between state and federal courts, nor would it place the district court in the role of supervisor of state litigation or the state court." *Id.* As presented in this case, an exercise of jurisdiction by the district court "merely preserves the federal forum for federal claims raised by plaintiffs in a federal proceeding, although a similar state action was also filed." *Id.* Most importantly, if the injunctive relief sought by Hammocks here is granted, the result will not imply the kind of cumbersome federal takeovers at issue in *31 Foster Children* or *Miller.*

From a practical standpoint, the *Younger* abstention doctrine does not apply because there is no "pending" state court case. The state appeals court ruled the monetary issues do not equate to irreparable harm. The Hammocks did not appeal that decision, so the issue is resolved. Instead, the Hammocks now seeks relief in the federal forum under the Fourth Amendment, with no undue interference on state proceedings. The SAO's argument that abstention is warranted here is not consistent with Eleventh Circuit jurisprudence, because the requested federal relief would not result in meticulous and burdensome federal oversight of state court or court-like

functions.  Thus, the Motion to Dismiss should be denied.

**D.      This action can proceed against the SAO under Section 1983.**

Recently, the Supreme Court reiterated that "[s]ection 1983 broadly authorizes suit against state officials for the "deprivation of any rights" secured by the Constitution. *Nance v. Ward*, No. 21-439, 2022 WL 2251307, at *5 (U.S. June 23, 2022). The Court continued:

> One of the "main aims" of §1983 is to "override"—and thus compel change of—state laws when necessary to vindicate federal constitutional rights. Monroe v. Pape, 365 U. S. 167, 173 (1961); see *Zinermon v. Burch*, 494 U. S. 113, 124 (1990). Or said otherwise, the ordinary and expected outcome of many a meritorious §1983 suit is to declare unenforceable (whether on its face or as applied) a state statute as currently written. See, e.g., *Cedar Point Nursery v. Hassid,* 594 U. S. ___ (2021). And in turn, the unsurprising effect of such a judgment may be to send state legislators back to the drawing board. See, e.g., *Kolender v. Lawson*, 461 U. S. 352, 358 (1983).

*Id.* at 7.  The Fourth Amendment requires that the subpoena be sufficiently limited in scope, relevant in purpose, and specific in directive so that compliance will not be unreasonably burdensome. *Donovan v. Lone Steer, Inc.,* 464 U.S. 408, 415, 104 S. Ct. 769, 773, 78 L. Ed. 2d 567 (1984).  Here, the SAO has issued three separate subpoena duces tecum that would require the Hammocks to produce over a million documents.

The Supreme Court is instructive that a test of reasonableness should be applied in considering whether a subpoena duces tecum amounts to an unreasonable search and seizure. *Hale v. Henkel*, 201 U.S. 43, 26 S.Ct. 370, 50 L.Ed. 652 (1906).   In *Hale*, the Court determined that the subpoena duces tecum in question was far too sweeping in its terms to be regarded as reasonable.  *Id*. Specifically, the subpoena did not require the production of a single contract, or of contracts with a particular corporation, or a limited number of documents, but all reports made and accounts rendered by such companies from the date of the organization of the company. *Id*. "[S]ome necessity should be shown, either from an examination of the witness orally, or from

13

the known transactions of these companies with the other companies implicated, or some evidence of their materiality produced, to justify an order for the production of such a mass of papers." *Id*. at 77.

The SAO's contention that the precedent surrounding the Fourth Amendment as applied to the issuance of subpoenas duces tecum does not support the Hammocks claims is simply untrue.  In *Oklahoma Press Publishing Co. v. Walling*, 327 U.S. 186 (1946), the Supreme Court ruled that subpoenas duces tecum must be supported by probable cause and relevant, and not unreasonable, excessive or overbroad.  In *See v. City of Seattle*, 387 U.S. 541, 544 (1967), the Supreme Court held that "the Fourth Amendment requires that the subpoena be sufficiently limited in scope, relevant in purpose, and specific in directive so that compliance will not be unreasonably burdensome. In *Donovan v. Lone Steer, Inc*., 464 U.S. 408, 415 (1984), the Supreme Court affirmed its position in See and quoted the exact same language. Even as recent as 2017, the Supreme Court reaffirmed that subpoenas duces tecum must be relevant to the matter under investigation and cannot be unduly burdensome. *McLane Co. v. E.E.O.C*., 137 S. Ct. 1159, 1162 (2017).

The SAO further argues that even if the Complaint had named an individual prosecutor, this action should be dismissed based on qualified immunity. The SAO argues that it is entitled to immunity on the Hammocks constitutional claims.  Qualified immunity is a defense only to claims for monetary relief. *See Fortner v. Thomas,* 983 F.2d 1024 (11th Cir.1993).  *D'Aguanno v. Gallagher*, 50 F.3d 877, 879 (11th Cir. 1995).   Eleventh Amendment (or sovereign) immunity does not bar a suit for nonmonetary relief,  such  as  an  injunction. *Board  of  Trustees  of  the University of Alabama v. Garrett,* 531 U.S. 356, 121 S.Ct. 955, 148 L.Ed.2d 866 (2001).   In *Edelman v. Jordan,* 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974), the Supreme Court held

14

that when a plaintiff sues a state official alleging a violation of federal law, the federal court may award an injunction that governs the official's future conduct. *See D'Aguanno v. Gallagher*, 50 F.3d 877, 879 (11th Cir. 1995).

"[I]t has been settled that the Eleventh Amendment provides no shield for a state official confronted by a claim that he had deprived another of a federal right under the color of state law," *Hafer*, 502 U.S. at 30 (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 237 (1974)) In *Armstead v. Coler*, 914 F.2d 1464, 1467–68 (11th Cir. 1990), the Eleventh Circuit held that *Ex parte Young* permitted injunctive relief against Florida officials who had denied appropriate care and habitation to mentally disabled patients at a state hospital. Qualified immunity is inapplicable to the injunctive and declaratory relief requested in the Complaint.

**E.     The Hammocks properly stated a claim for relief.**

A party seeking "a preliminary injunction must establish that (1) it has a substantial likelihood of success on the merits of the underlying claim; (2) a substantial likelihood of suffering irreparable injury if the injunction is not granted; (3) the threatened injury to the plaintiff outweighs whatever damage the proposed injunction may cause the opposing party; and (4) if issued, the injunction would not be adverse to the public interest." *Forsyth Cnty. v. U.S. Army Corps of Eng'rs*, 633 F.3d 1032, 1039 (11th Cir. 2011) (internal quotation marks omitted). *Vital Pharms., Inc. v. Alfieri*, 23 F.4th 1282, 1290–91 (11th Cir. 2022).

First, Hammocks has a substantial likelihood of success on the merits of this Fourth Amendment claim because there is no way to avoid the conclusion that the three subpoena duces tecum submitted by the SAO are unreasonable, excessive, and overbroad. There is extensive case law in this Motion to support this. Second, the Hammocks will suffer irreparable injury in the injunction is not granted due to the extensive time, personnel, and costs associated with

15

producing over a million documents.  Third, the injunction would not cause any damage to the opposing party.  Rather, the State already has collected thousands of documents from various entities associated with the Hammocks.  A subpoena sufficiently limited in scope would actually assist the SAO in the litigation of this case and thus benefit both parties.   Fourth, the injunction would not be adverse to the public interest in any way.

Similarly, the Hammocks is seeking declaratory relief to invalidate Florida Stateue 27.04, which purports to give the SAO *carte blanche* authority to issue subpoenas duces tecums regardless of the scope of the request for documents.  The statute give the SAO that right without any judicial oversite as to whether the request is reasonable, excessive, overbroad, or in violation of the Fourth Amendment.  Again, the Supreme Court reiterated:

> One of the "main aims" of §1983 is to "override"—and thus compel change of— state laws when necessary to vindicate federal constitutional rights. Monroe v. Pape, 365 U. S. 167, 173 (1961); see *Zinermon v. Burch*, 494 U. S. 113, 124 (1990). Or said otherwise, the ordinary and expected outcome of many a meritorious §1983 suit is to declare unenforceable (whether on its face or as applied) a state statute as currently written. See, e.g., *Cedar Point Nursery v. Hassid,* 594 U. S. ___ (2021). And in turn, the unsurprising effect of such a judgment may be to send state legislators back to the drawing board. See, e.g., *Kolender v. Lawson*, 461 U. S. 352, 358 (1983).

The Hammocks' claim for declaratory relief is clearly viable and the motion to dismiss must be denied regarding this issue.

## CONCLUSION

For the reasons stated above, Plaintiff Hammocks Community Association Inc. respectfully requests that this Honorable Court enter an Order DENYING the Defendant's motion to dismiss the Complaint.

Respectfully submitted,

16

Hilton Napoleon, II, Esq., FBN 17593
2555 Ponce de Leon Blvd., Suite 600
Coral Gables, Florida 33134
Telephone: 305.476.7100
Facsimile: 305.476.7102

By: /s/ *Hilton Napoleon, II*
         Hilton Napoleon, II

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on August 31, 2022, I have filed the foregoing document with the

Clerk of the Court using the CM/ECF system. I also certify that the foregoing document is being

served this day on all counsel and parties of record either via transmission of Notices of

Electronic Filing generated by CM/ECF or in some other authorized manner for those parties

who are not authorized to receive electronically Notices of Electronic Filing.

By: /s/ *Hilton Napoleon, II*
         Hilton Napoleon, II